**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Gina Russo

     v.                        Case No. 21-cv-703-SM-TSM
                                    Opinion No. 2024 DNH 101

New Hampshire Neurospine
Institute, P.A. and
Uri M. Ahn

### Memorandum Order

Gina Russo brings claims against her former employer, New Hampshire Neurospine Institute, P.A. ("Institute"), and one of its partners, Uri M. Ahn.  Russo alleges that the Institute discriminated against her based on her gender in violation of Title VII and RSA ch. 354-A; that the Institute and Dr. Ahn retaliated against her in violation of Title VII and RSA ch. 354-A; that Dr. Ahn aided and abetted the Institute's gender discrimination in violation of RSA ch. 354-A; that the Institute wrongfully terminated her; and that Dr. Ahn defamed her.[1]  Dr. Ahn moved for summary judgment on the three claims brought against him, and Russo objected.  The court granted summary

---

[1] The reference to Title VII is to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the reference to RSA ch. 354-A is to New Hampshire's Law Against Discrimination, New Hampshire Revised Statutes Annotated Chapter 354-A.

judgment in favor of Dr. Ahn (endorsed order, November 20, 2024), for the reasons that follow.

## Standard of Review

Under Federal Rule of Civil Procedure 56(a), the court shall grant a motion for summary judgment when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. A genuine factual dispute exists if "a reasonable jury could return a verdict for the nonmoving party," and a fact is material to that dispute if it "might affect the outcome of the of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The court reviews "the evidence in the light most favorable to the nonmoving party and giving that party the benefit of any and all reasonable inferences." Segrain v. Duffy, 118 F.4th 45, 56 (1st Cir. 2024). "In opposing a motion for summary judgment, however, a plaintiff must offer admissible evidence." Rios v. Centerra Gr. LLC, 106 F.4th 101, 114 (1st Cir. 2024). Evidence for purposes of summary judgment does not include "conclusory allegations, improbable inferences, and unsupported speculation." To-Ricos, Ltd. v. Productos Avicolas Del Sur, Inc., 118 F.4th 1, 4 (1st Cir. 2024).

Background[2]

Gina Russo was employed by the Institute beginning on March 11, 2008, as a physician's assistant, PA-C ("PA").  Uri Ahn is an orthopedic surgeon and a vice president and partner at the Institute.[3]  Russo worked part-time, three days per week, but also had on-call responsibilities on weekends and holidays.  While Russo worked at the Institute, its doctors were all male, and there was only one other female physician's assistant.

---

[2] The court summarizes the properly supported material evidence provided by the parties in support of and in opposition to summary judgment.  Because the motion for summary judgment pertains to the claims against Dr. Ahn, the court did not include facts provided by the parties that are not material to Russo's claims against Dr. Ahn.

[3] In the complaint, Russo identified the Institute as a professional association of doctors that is a New Hampshire corporation.  Doc. no. 1, at 2.  Dr. Ahn is a separate defendant whom Russo describes as a vice president of the Institute and a partner.  Id.  Russo attributes many actions and decisions to "defendants" collectively to include the Institute and Dr. Ahn.

Although Russo states that Dr. Ahn was "a decision-maker with respect to [Russo's] employment" (doc. no. 58, at 4), she has not shown, with a developed legal argument, that Dr. Ahn is liable for decisions and actions by the Institute.  See, e.g., Delta MB LLC v. 271 S. Broadway, LLC, 2024 WL 3826113, at *4-*5 (D.N.H. Aug. 15, 2024); Centurion Networking Serv. Partners, LLC v. Dr. Wade N. Barker, P.A., 2018 WL 1972789, at *4-*5 (D. Mass. Apr. 26, 2018).  She also has not shown that Dr. Ahn is liable for decisions or actions of other Institute employees.

For purposes of this motion, Dr. Ahn and the Institute are separate parties and legally separate entities.  Dr. Ahn is not legally liable for the actions of the Institute or other Institute employees.  Therefore, the court considers the actions taken by the Institute and its other employees separate from those taken by Dr. Ahn.

During the first eight years that Russo worked at the
Institute, she had limited contact with Dr. Ahn.  In 2016, the
Institute changed its operations so that the PAs worked with all
of the surgeons.  After the Institute changed its operations,
Russo had more interaction with Dr. Ahn.

Russo provides exhibits that show Dr. Ahn had a history of
being impatient, unpleasant, and rude with Institute employees,
hospital staff, and patients, many of whom were women.[4]  His
conduct generated problems and incidents that had to be
addressed by administrators and his peers.

With their increased contact, Dr. Ahn concluded that Russo
did not like him based on her body language toward him in
contrast to her friendly demeanor toward other doctors in the
practice.  He noted that he was not part of the small group of
doctors with whom she was friendly.  Dr. Ahn had been able to
resolve issues with male PAs who worked with him.  Dr. Ahn did
not trust Russo or another female PAs and believed that Russo
avoided working with him.  But, he gave Russo high performance

---

[4] Dr. Ahn contends that these documents should not be
considered for purposes of summary judgment because they do not
meet the evidentiary standard under Rule 56(c)(2).  While that
objection is likely correct, in the interest of a complete view
of Russo's case, the court has considered the exhibits provided
by Russo.

reviews.  Their strained relationship resulted in several
incidents of friction and disagreement between them.

The first incident occurred over the weekend of October 15,
2016, when Russo was on call.  Russo was doing rounds at Elliott
Hospital in Manchester when an Institute patient, Dr. Wang's
patient, was "coded with a cardiac condition," and Russo was
involved in that patient's care.  Doc. no. 42-1, at 4.  During
that event, Dr. Ahn called Russo and asked her to see an urgent
patient at St. Joseph's Hospital in Nashua for a lumbar epidural
abscess.  Russo told Dr. Ahn she could not leave because she was
involved in caring for Dr. Wang's patient at Elliott Hospital
and asked Dr. Ahn if he could get to St. Joseph's Hospital.  Dr.
Ahn told Russo to go to see the patient at St. Joseph's Hospital
as soon as possible, and Russo went to St. Joseph's Hospital.

Dr. Ahn's wife, who is a nurse, had previously worked with
Russo.  She heard the conversation between Dr. Ahn and Russo.
Mrs. Ahn thought that Russo's tone during the conversation with
Dr. Ahn was rude, hostile, and unprofessional.  Dr. Ahn called
Dr. Wang to confirm that Russo had been involved in care for a
patient who was coding and said that Russo was rude and
insubordinate.[5]  Russo also called Dr. Wang to say that Dr. Ahn

---

[5] Russo contends that Dr. Ahn never mentioned that she was
insubordinate until after she claimed gender discrimination.
Dr. Wang, however, testified during his deposition that Dr. Ahn

had been rude to her and that his directive for her to go to St. Joseph's Hospital was inappropriate.

Dr. Ahn complained to the Executive Director of the Institute, Anne Talbot-Kleeman, about the incident. Talbot-Kleeman talked to Russo and suggested that Russo and Dr. Ahn resolve the issue.

A second incident occurred during the summer of 2017. Russo met with Dr. Ahn's patient to obtain his consent for surgery. During the meeting, the patient had questions about the possibility of subsequent additional surgery. Russo discussed that possibility and possible alternatives to the then scheduled procedure. Russo left the patient to check with Dr. Ahn about alternatives to the scheduled procedure, but when she could not find Dr. Ahn, she spoke to Dr. Luther, who said alternatives could be plausible. Russo told the patient that another doctor said an alternative procedure was plausible but that she did not know what Dr. Ahn's feeling would be.

After that meeting, the patient's wife contacted Dr. Ahn and told him that they had doubts about his recommended surgery based on what Russo told them. Dr. Ahn thought that Russo's discussion with the patient was an inappropriate surgical

---

called him after the first incident in 2016 and told him that Russo had been rude and insubordinate.

opinion and that her actions damaged his relationship with his patient.  Dr. Ahn told Russo he was not happy with her actions and that her conduct was inappropriate and beyond obtaining surgical consent, which was her task.  Dr. Ahn asked Talbot-Kleeman not to assign Russo to any of his cases.

The third incident occurred on March 9, 2019, when Dr. Ahn and Russo were both on call.  While Russo was working at Catholic Medical Center, she received a call from Dr. Ahn.  He was seeking help in administratively discharging a patient. Russo responded by asking Dr. Ahn whether he needed her to talk him through a discharge or whether he wanted her to discharge the patient when she went home.  Both Dr. Ahn and Russo raised their voices during the conversation and characterized their interaction as yelling, although they dispute who used a raised voice first.

Dr. Ahn called Talbot-Kleeman to report that Russo acted in a disrespectful and unprofessional manner.  He also sent an email to report that concern.  Russo sent an email to Talbot-Kleeman about the telephone call as well, in which she reported that Dr. Ahn became belligerent and called her passive aggressive and disrespectful.  She reported that he continued to yell and that she said she was not listening.  Russo met with Talbot-Kleeman and reported that Dr. Ahn was lazy and took short cuts with patient care that caused problems.

The Institute held a board meeting on March 25, 2019.  Dr. Ahn told the board members that he could not work with Russo and that she had been disrespectful, insubordinate, and difficult to work with.  The board members provided their opinions and discussed the situation.  Following their discussion, the board unanimously voted to terminate Russo's employment.

Talbot-Kleeman met with Russo on March 26, 2019, to inform her of the board's decision to terminate her employment.  When Talbot-Kleeman had a follow up call with Russo on March 29, Russo expressed her belief that her termination was not fair and that she believed the Institute was biased against women. Talbot-Kleeman suggested that they agree to a transition plan for Russo to continue to work, despite her termination.  The Institute proposed that Russo would work through June and receive a $15,000 severance payment.  Russo made a counter proposal to work until April 19, and the Institute changed the plan to conform to her proposal.[6]

Russo did not agree to the proposed plan, and she and Talbot-Kleeman continued to negotiate terms for the transition. On April 29, Russo's counsel sent a demand letter, alleging gender discrimination and demanding $100,000.  On May 30,

_____

[6] Russo obtained legal counsel at some point during the negotiation process.

Talbot-Kleeman notified Institute partners that any requests for recommendations for Russo should go through the Institute's counsel.  The Institute then decided that May 2 would be Russo's last day of work.  Notice was sent to Russo, through counsel, that she was terminated as of May 2.

Russo received recommendations from Institute doctors.  She was hired by Concord Hospital in July of 2019 as a PA.  She remains in that position.

The Institute hired an independent investigator, Elizabeth Bailey, in July of 2019, to investigate Russo's allegations of gender discrimination against the Institute and Dr. Ahn.  Bailey provided her findings in a letter on September 24, 2019.  She found that the three incidents involving Dr. Ahn and Russo were not the result of gender bias or discrimination and, instead, were due to Dr. Ahn's dislike of Russo as a person and her disrespectful communications with him.  Bailey also found that complaints about Dr. Ahn's and another surgeon's conduct showed unprofessionalism but not gender bias.  She concluded that there was not a culture of gender bias at the Institute.  Russo filed a complaint against the Institute and Dr. Ahn with the New

Hampshire Human Rights Commissioner in October of 2019, and

filed this action on August 22, 2021.[7]

## Discussion

Dr. Ahn moved for summary judgment on the claims against

him, Count II - retaliation in violation of RSA 354-A; Count III

– aiding and abetting gender discrimination in violation of RSA

354-A; and Count V - defamation.  Russo argued that material

factual disputes preclude summary judgment.[8]  For the reasons

that follow, summary judgment was granted in favor of Dr. Ahn.

A.   Count II – Retaliation

Russo's retaliation claim in Count II is that Dr. Ahn

violated RSA ch. 354-A when Russo's employment was terminated on

---

[7] Although the parties do not cite the decision of the New
Hampshire Human Rights Commission in the record, the court
assumes that decision was not favorable to Russo.

[8] Russo asserts that the Institute fabricated evidence to
justify its decision to terminate her employment, which she
argues is sufficient evidence to show intentional discrimination
and to avoid summary judgment.  In support, she contends that
"metadata" for five documents show that "defendants" fabricated
them, after they received her demand letter, to show that
meetings occurred years before the demand letter.  Russo,
however, provides only her own inferences from dates shown in
the "metadata", which is insufficient to support her fabrication
charge for purposes of summary judgment.  Fed. R. Civ. P. 56(c)
Further, she provides no evidence that Dr. Ahn was involved in
the alleged fabrication.  Therefore, the court will not address
or resolve the issue that Russo raises about fabricated evidence
for purposes of Dr. Ahn's motion.

May 2, 2019.  Under New Hampshire law, the court relies on federal cases interpretating Title VII to decide analogous discrimination claims under RSA ch. 354-A.  Zerveskes v. Wentworth-Douglass Hosp., No. 24-cv-025-SE-TSM, 2024 WL 4301375, at *2 (D.N.H. Sept. 26, 2024) (citing Hubbard v. Tyco Integrated Cable Sys., Inc., 985 F. Supp. 2d 207, 218 (D.N.H. 2013)).  To establish retaliation, a plaintiff must prove that she engaged in protected conduct, that the defendant subjected her to an adverse employment action, and that the adverse employment action is causally linked to the plaintiff's protected conduct. Serrano-Colon v. United States Dep't of Homeland Sec., No. 22-1089, 2024 WL 4763442, at *9 (1st Cir. Nov. 13, 2024); Stratton v. Bentley Univ., 113 F.4th 25, 41–42 (1st Cir. 2024).  "An employee has engaged in activity protected by Title VII if she has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII."  Serrano-Colon, 2024 WL 4763442, at *9 (internal quotation marks omitted).

Dr. Ahn, along with the other Institute partners, voted unanimously to terminate Russo's employment on March 25, 2019. Russo, however, continued to work at the Institute while she, through counsel, and Talbot-Kleeman negotiated a transition plan.  Russo's counsel sent a letter to Talbot-Kleeman on April

29, 2019, that stated Russo's termination was "the result of one practitioner who has a well-known problem working with women." Doc. no. 51-19, at 2.  Counsel further stated that Russo was willing to resolve the termination of her employment and "her claims against the Institute and its partners for the amount of $100,000."  Id.

In response to that letter, Talbot-Kleeman decided to finalize the termination of Russo's employment immediately without a further transition period.  She sent a letter to Russo's counsel on May 2 that terminated Russo's employment. Talbot-Kleeman notified the Institute partners the next day that Russo's employment had been terminated.  Dr. Ahn responded to Talbot-Kleeman's notice, stating: "Thank you for taking care of this."  Doc. no. 51-22.

Russo argues that Dr. Ahn retaliated against her for claiming gender discrimination by terminating her employment on May 2.  Assuming that counsel's letter to Talbot-Kleeman was protected activity and that the termination on May 2 was an adverse action, despite the vote to terminate her on March 25, the record shows that Talbot-Kleeman, not Dr. Ahn, terminated Russo's employment on May 2.  Russo provides no evidence that

Dr. Ahn retaliated against Russo because of the demand letter her counsel sent to Talbot-Kleeman.[9]

Therefore, Russo did not demonstrate that a material factual dispute exists  requiring trial of her retaliation claim against Dr. Ahn.

B. <u>Count III – Aiding and Abetting</u>

"An individual may be held liable for aiding and abetting unlawful employment discrimination under RSA 354-A:2 and :7." <u>Artesi v. DeMoulas Super Markets, Inc.</u>, No. 19-CV-214-AJ, 2020 WL 13730262, at *11 (D.N.H. June 2, 2020) (citing <u>U.S. Equal Emp't. Opportunity Comm'n v. Fred Fuller Oil Co.</u>, 168 N.H. 606, 611 (2016)); <u>see also</u> RSA 354-A:2 XV(d) (defining unlawful discriminatory practices to include "aiding, abetting, inciting, compelling or coercing another or attempting to aid, abet, incite, compel, or coerce another to commit an unlawful discriminatory practice ...."). "[F]or an individual to be liable for aiding and abetting unlawful employment discrimination under RSA 354-A:2,XV(d), it must be proven that the individual aided and abetted an unlawful discriminatory practice committed by an employer as specified in RSA 354-A:7,

---

[9] Dr. Ahn's after-the-fact thanks to Talbot-Kleeman establishes that he did not terminate Russo's employment.  As noted above, Russo has not shown a legal basis to attribute actions taken by other Institute employees to Dr. Ahn.

I." <u>Fred Fuller</u>, 168 N.H. at 611.  RSA 354-A:7, I describes the unlawful discriminatory practices by an employer based on gender or sex.

Russo does not specify which part of RSA 354-A, I she relies on as an unlawful discriminatory practice by the Institute that Dr. Ahn aided and abetted.  In fact, Russo did not address the aiding and abetting claim at all in her objection to Dr. Ahn's motion for summary judgment.  She asserts that the court may infer that her employment was terminated based on a discriminatory motive based on the actions of Institute doctors, which she argues could be interpreted to be evidence of discrimination based on female stereotyping, and that she may also rely on the burden-shifting framework to show discrimination.

### 1.  <u>Stereotyping</u>

Russo contends that Dr. Ahn's reaction during the telephone call on March 9 was "over-the-top" and for that reason can be inferred to be evidence of gender discrimination.[10]

---

[10] Russo cites an email from another former Institute employee, sent after Russo's termination, who lists a bad experience with Dr. Ahn and bad experiences with another surgeon, and documentation of an incident between Dr. Ahn and an x-ray technician.  Russo argues that the two incidents demonstrate Dr. Ahn's bias about how women should behave.  The cited incidents occurred in the context of Dr. Ahn's dissatisfaction with the employee's or staff person's

Specifically, Russo argues that Dr. Ahn perceived her response
to his request for help as unprofessional only because she is a
woman.  To make that assumption, however, the response must be,
at a minimum, inappropriately upset and unprofessional.  Burns
v. Johnson, 829 F.3d 1, 15 (1st Cir. 2016).

In the March 9 incident, Russo responded to Dr. Ahn's
request for help with options that Dr. Ahn found to be
untenable.  Dr. Ahn thought Russo's response was rude and
unprofessional, and he responded in a raised voice, which caused
Russo to use a raised voice or to yell back at him.

Russo's interaction with Dr. Ahn could legitimately be
construed to have elicited Dr. Ahn's heated response.  Russo has
not shown that Dr. Ahn's reaction was "over-the-top" or would
otherwise support an inference that he reacted badly because of
her gender.  Russo also argues that Dr. Ahn was biased against
Russo based on his belief that women should be submissive not
assertive, but the cited evidence does not support an inference
of stereotyping to show gender discrimination.[11]

---

performance of work responsibilities.  While Russo demonstrates
that Dr. Ahn could be unpleasant and rude to people he deemed to
be working for him, these examples do not demonstrate a bias
against women.

[11] Based on the record, Dr. Ahn's expressed concern with
professionalism and respect seems connected with his perception
of the proper role of a PA in relation to a surgeon, not on
gender.

Russo points to Dr. Wang's statements.  Dr. Wang was asked in his deposition whether he ever witnessed Russo being disrespectful, and he answered no.  He then explained that Russo was "very assertive" and "headstrong" and that he did not think those were bad qualities.  Doc. no. 48-1, at 18.  Dr. Wang further explained that some of the PAs were timid and that Russo was more "actional" because if she disagreed with a surgeon she would be confident in giving her opinion.  Dr. Wang testified that he usually thought that was a good quality.  As such, Dr. Wang's testimony did not show that he viewed Russo negatively or that he harbored any discriminatory animus against her based on gender or that Dr. Ahn's reaction to Russo was because of a discriminatory animus against women.

### 2.  Burden-shifting framework

It appears that Russo may intend to show an unlawful discriminatory practice through a prima facie case under the burden-shifting framework.  See Serrano-Colon, 2024 WL 4763442, at *7.  A court may infer discrimination from undisputed facts under the burden-shifting framework, if the plaintiff provides evidence "that: (1) she belonged to a protected class, (2) she performed her job satisfactorily, (3) her employer took an adverse employment decision against her, and (4) her employer continued to have her duties performed by a comparably qualified

person." Id. (internal quotation marks omitted).  If the plaintiff makes that prima facie case, "the burden of production then shifts to the defendants to state a legitimate, nondiscriminatory reason for the adverse employment actions." Id. (internal quotation marks omitted).  Then, the defendant is entitled to summary judgment unless the plaintiff "raises a genuine issue of material fact that the reasons offered by the defendants were a pretext for discrimination." Id. (internal quotation marks omitted).

Russo omits the elements of a prima facie case and moves directly to evidence of pretext.  See Serrano-Colon, 2024 WL 4763442, at *7 (providing elements of prima facie case for burden-shifting analysis under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  In the absence of showing material facts to support the elements of a prima facie case, however, Russo has not carried her burden of establishing a triable issue of an unlawful discriminatory practice based on the burden-shifting framework.  Even if Russo could make that minimal showing, however, she still lacks evidence of pretext.

Russo states that the Institute offered "shifting explanations" for her termination, which would support a conclusion that the explanations were pretext for discrimination.  A plaintiff can establish pretext by showing that the employer gave different and inconsistent reasons for

its actions.  Collazo-Rosado v. University of Puerto Rico, 765 F.3d 86, 93 (1st Cir. 2014).  To demonstrate a pretext, inconsistent reasons for termination must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions that a reasonable factfinder could rationally find [that the proffered reason for termination is] unworthy of credence."  Cocuzzo v. Trader Joe's E. Inc., No. 23-1695, --- F. 4th ---, 2024 WL 4799281, at *7 (1st Cir. Nov. 15, 2024)

Russo states in her objection to Dr. Ahn's motion for summary judgment that the Institute gave the following explanations for her termination:  "(1) because she voluntarily agreed in advance to part company if the relationship wasn't working; (2) due to 'irreconcilable differences' with Ahn, and (3) because of her insubordinate and unprofessional behavior."  Doc. no. 47, at 23.  Taken in context, those reasons are neither shifting nor inconsistent.

Dr. Ahn sought termination of Russo's employment at the March 25 partners' meeting because he determined that she had been insubordinate and unprofessional in her interactions with him, which are plausibly understood as irreconcilable differences about how he expected to be treated.  Then, after the vote to terminate, Russo, through counsel, began to negotiate the terms of her employment during a transition period, and Russo does not dispute that she agreed to leave if

18

that relationship did not work.  For these reasons, the
Institute's explanations for her termination that she cites are
consistent and are without implausibilities, incoherence, or
contradiction.

Therefore, Russo cannot show a discriminatory employment
practice based on a pretextual reason for terminating her
employment.  Russo provides no other viable grounds to show
gender discrimination by the Institute.  In the absence of a
discriminatory employment practice by the Institute, Russo's
claim that Dr. Ahn aided and abetted the Institute in a
discriminatory employment practice fails.

C.  Defamation

Russo argued that Dr. Ahn defamed her by telling his
partners during the meeting on March 25 that Russo avoids work.[12]
In response, Dr. Ahn contends that Russo lacks evidence that he
made that statement because she did not attend the meeting and
her hearsay evidence of statements at the meeting do not meet
the evidentiary standard under Rule 56(c).  Dr. Ahn also
contends that the challenged statement is not actionable as
defamation because it is an opinion.

---

[12] In her complaint, Russo alleged that Dr. Ahn said she
"was trying to get out of work." Doc. no. 1, at 24.  In her
objection to the motion for summary judgment, she alleges that
Dr. Ahn told his partners that "Russo avoids doing work for
him."  Doc. no. 47, at 25.

To establish defamation under New Hampshire law, a plaintiff must "show that the defendants failed to exercise reasonable care in publishing false and defamatory statements of fact about the plaintiff to a third party." Richards v. Union Leader Corp., No. 2022-0197, --- A.3d ---, 2024 WL 4031395, at *5 (N.H. Sept. 4, 2024). The challenged statement must be a statement of fact, not an opinion, to be actionable. Id. A statement of fact may be proven true or false, while an opinion or an unflattering expression cannot be "objectively verified." Id.

The court need not address the hearsay basis of Russo's evidence because the challenged statement by Dr. Ahn is properly characterized as an opinion about the propriety of Russo's conduct, and not a statement of fact. Dr. Ahn perceived that Russo tried to get out of work or avoided doing work for him. Those perceptions were expressed as his opinions about Russo's actions or inactions.

In other words, Dr. Ahn formed an opinion about Russo's motivation for her actions, which might or might not have been her actual reasoning, but he was expressing only his opinion. In contrast, for example, if Dr. Ahn said that Russo was absent on a certain day, refused to come to work on a certain day, or left work early on a certain day, those statements could be proven to be true or false. But, "Russo tried to avoid work" is

20

Dr. Ahn's opinion based on his perceptions, not a statement of fact.  Russo cites no evidence to show that Dr. Ahn did not actually hold that opinion.

Therefore, Russo has not shown a triable issue to avoid summary judgment on the defamation claim.

## Conclusion

For the foregoing reasons, Dr. Ahn's motion for summary judgment (doc. no. 42) is granted.  The claims against Dr. Ahn in Counts II, III, and V are dismissed.


SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

November 22, 2024

cc:  Counsel of Record